UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

KENNETH STERN, an individual, on behalf of
himself and all others similarly situated,

                Plaintiff,

          - against -

ROCKET MORTGAGE, LLC

                Defendants.

-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-06879 (PKC) (AYS)

PAMELA K. CHEN, United States District Judge:

Plaintiff Kenneth Stern, an attorney acting *pro se*,[1] brings this lawsuit on behalf of himself and all others similarly situated, alleging that mortgage lender Rocket Mortgage, LLC unlawfully charged him improper late fees on a mortgage loan. Before the Court is Defendant Rocket Mortgage, LLC's motion to dismiss all claims in this action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons herein, the Court grants Defendant's motion in its entirety.

---

[1] Although Plaintiff is representing himself, as a practicing lawyer, he is not entitled to the degree of liberality given to non-attorney *pro se* plaintiffs. *Jones v. New York*, No. 18-CV-7241 (AMD), 2019 WL 96244, at *1 (E.D.N.Y. Jan. 3, 2019) (citing *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010); *Othman v. City of New York*, No. 13-CV-4771 (NGG) (SJB), 2018 WL 1701930, at *4 (E.D.N.Y. Mar. 31, 2018); *Heller v. Emanuel*, No. 07-CV-1393 (ARR), 2007 WL 1491081, at *2 (E.D.N.Y. May 21, 2007) (declining to read liberally the pleadings of a disbarred attorney proceeding *pro se*)).

## BACKGROUND

I.   **Factual Allegations**[2]

On February 16, 2016, Plaintiff entered into a mortgage loan agreement with Defendant regarding Plaintiff's property, located at 700 S. Harbour Island Boulevard, Tampa, Florida 33602. (Complaint ("Compl."), Dkt. 1, ¶ 10; Defendant's Affidavit in Response to Motion to Dismiss ("Def.'s Aff."), Dkt. 20-1, at ECF[3] 4–6.)  By the terms of his loan agreement (the "Mortgage," Dkt. 20-1), he was required to make monthly payments of $991.84, consisting of a combination of loan principal and loan interest, to Defendant.  (*See generally*, Dkt. 1-1 ("Exhibit A").)  The mortgage promissory note (the "Note") provides that if Plaintiff fails to make the monthly payment "by the end of fifteen calendar days after the date it is due," Defendant will assess a late fee of five percent (5%) of the outstanding monthly payment.  (Dkt. 20-2, Section 6.(A), at ECF 3.)  Under the Note, Plaintiff's monthly mortgage payments were due the first day of every month.  (*Id.*, Section 3.A, at ECF 2.)

---

[2] The Court assumes the truth of the non-conclusory, factual allegations contained within Plaintiff's Complaint.  *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court also considers Plaintiff's Exhibits A–C, which are appended to Plaintiff's Complaint; Plaintiff's mortgage loan contract (Dkt. 20-1, "Mortgage") and promissory note (Dkt. 20-2, "Note"), which were appended to Defendant's motion; and the billing statements annexed to Plaintiff's Response (Dkt. 23, "Billing Statements"), all of which are extensively referenced in the Complaint.  *See In re Livent, Inc. Noteholders Securities Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (explaining that, at the pleadings stage, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint."

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Each month since entering into the loan agreement, Plaintiff has paid significantly more than the $991.84 required to satisfy the monthly payment. (Compl., Dkt. 1, ¶¶ 11, 15; *see also* Dkt. 1-1.) Each monthly payment totaled either $2,391.84 or $2,741.84. (Compl., Dkt. 1, ¶ 15.) However, Defendant did not "apply" some of Plaintiff's payments such that his monthly total payments did not reach the required minimum monthly amount due. (*Id.*) Because Defendant deemed Plaintiff's monthly payments insufficient, it sent Plaintiff late fee notices and charged Plaintiff late fees of $49.59 on at least four occasions. (Dkt. 1-2, ("Exhibit B").)

On multiple occasions, Plaintiff notified Defendant that they had erroneously charged him late fees. (Compl., Dkt. 1, ¶ 16.) In response, in July 2021, Defendant reversed numerous "misapplications." (Ex. A, Dkt. 1-1, at ECF 14.) However, Defendant continued to charge Plaintiff late fees, so Plaintiff again notified Defendant of its "inaccurate and improper" billing practices, prompting Defendant in August 2021 to again institute a number of "misapplication reversals." (*Id.* at ECF 18; Compl., Dkt. 1, ¶ 16.) Even so, Plaintiff's payments were again "misapplied," and he was charged late fees on October 16 and November 16, 2021. (Ex. A, Dkt. 1-1, at ECF 21, 24.) As of the Complaint's filing, Defendant continued to impose late fees on Plaintiff. (Compl., Dkt 1, ¶ 17.)

## II.   Procedural History

Plaintiff filed this action on December 16, 2021. (*See generally* Compl., Dkt. 1.) Plaintiff's Complaint asserts the following claims on behalf of himself and a proposed class of individuals whose mortgage loan payments have been "misapplied[,] . . . improperly accounted for[,] and/or misrepresented by Rocket Mortgage, LLC":

> (1) Violation of the Truth in Lending Act ("TILA") and Regulation Z thereunder, for failing to credit Plaintiff's loan payments and improperly assessing late fees against Plaintiff;

(2) Breach of Fiduciary Duty, for failing to institute proper billing practices, withholding or misapplying Plaintiff's payments, and making false representations regarding Plaintiff's monthly payments;

(3) Breach of Implied Covenant of Good Faith and Fair Dealing, for consciously and willfully instituting inaccurate and improper billing practices;

(4) Breach of Contract, for failing to comply with "essential terms of the contract regarding the application of payments";

(5) Common Law Fraud, for "repeatedly misapplying and/or withholding Plaintiff's payments to cause Plaintiff to purportedly miss the required monthly payments" despite representing "that a certain amount of payment is due on a monthly basis," and then "imposing late fees that would inflate the amount due";

(6) Negligence, for violating a legal duty to Plaintiff through Defendant's improper billing practices; and

(7) Unjust Enrichment, for "withholding or misapplying Plaintiff's payments to make it seem that Plaintiff did not meet the required monthly payments [and] then imposing [improper] late fees."

(Compl., Dkt. 1, ¶¶ 19–64.)

On January 18, 2022, Defendant Rocket Mortgage filed a pre-motion conference request for their anticipated motion to dismiss. (Dkt. 9.) Plaintiff failed to respond pursuant to the Court's Individual Rule 3.A, and the Court denied the pre-motion conference request as unnecessary and ordered the parties to file a joint proposed briefing schedule. (1/27/2022 Docket Entry.) The briefing schedule approved by the Court required Defendant to serve its motion on or before April 15, 2022; Plaintiff to respond on or before May 27, 2022; and Defendant to serve its reply by June 24, 2022. (2/3/2022 Docket Entry.) Due to Plaintiff's untimely response (*see* 6/2/2022, 6/7/2022, 6/15/2022 Docket Entries), the motions were not fully briefed until July 1, 2022. (Dkts. 18–23.).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). In addressing the sufficiency of a complaint, a court must accept the well-pleaded factual allegations in the complaint as true, but "need not credit conclusory statements unsupported by assertions of facts[,] or legal conclusions . . . presented as factual allegations." *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 404 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Additionally, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent,* 151 F. Supp. 2d at 405–06 (collecting cases).

## DISCUSSION

## I.   Plaintiff's TILA Claim Must Be Dismissed

Plaintiff alleges that Defendant's imposition of late fees has violated two provisions of Subpart B of Regulation Z of the Truth in Lending Act: 12 C.F.R. §1026.10, which articulates the rule that "[a] creditor shall credit a payment to the consumer's account as of the date of the receipt, except when a delay in crediting does not result in a finance or other charge," and § 1026.13,

5

providing what Plaintiff describes as a "comprehensive and exclusive list of billing errors." (Compl., Dkt. 1, at 8–10.)  Defendant argues that Plaintiff fails to state a TILA claim because Subpart B of Regulation Z, which includes 12 C.F.R. §§ 1026.10 and 1026.13, applies exclusively to "open-end consumer credit plans," whereas Plaintiff's mortgage is a "closed-end credit transaction."  (Defendants' Motion to Dismiss ("Defs.' Motion")), Dkt. 19, at ECF 14–16.)

"Generally, there are two types of consumer credit transactions regulated by TILA: open end credit plans and closed end credit plans."  *Follman v. World Financial Ntwk. Nat. Bank*, 971 F. Supp. 2d 298, 301 (E.D.N.Y. 2013).  "Open end credit plans" are plans "under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance," 15 U.S.C. § 1602(j), while "[a] closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan *such as a mortgage or car loan*."  *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 n. 22 (S.D.N.Y. 2011) (internal quotation and citation omitted) (emphasis added).

Within Regulation Z, "Subpart B contains the rules for open-end credit."  12 C.F.R. § 226.1(d)(iv)(2); *see also Asher v. Chase Bank USA, N.A.*, 310 F. App'x 912, 919 (7th Cir. 2009) (noting that "Subpart B of Regulation Z . . . governs 'open-ended credit,' and has a separate set of rules from those in Subpart C governing 'closed-ended credit'"); *Zevon v. Dep't Stores Nat. Bank*, No. 12-CV-4970 (CM), 2013 WL 3479432, at *1 (S.D.N.Y. July 8, 2013) (same).

Plaintiff's mortgage is clearly a closed-end credit transaction.  *See, e.g., Evans v. Select Portfolio Servicing, Inc.*, 18-CV-5985 (PKC) (SMG), 2020 WL 5848619, at *11 (E.D.N.Y. Sept. 30, 2020) (describing a mortgage loan agreement as a closed-end credit transaction); *McAnaney v.*

*Astoria Financial Corp.*, No. 04-CV-1101 (JFB) (WDW), 2007 WL 2702348, at *6 (E.D.N.Y. Sept. 12, 2007) ("[I]t is beyond doubt that the mortgage and [home equity line of credit] loans . . . constitute closed-end credit transactions, in that they are one-time loans wherein defendants fully performed their obligations under the respective loan agreements at the time the parties entered into such agreements." (citations and quotations omitted)).  Because Plaintiff alleges a violation of TILA under the provisions of Regulation Z that do not apply to his mortgage, his TILA cause of action must be dismissed.[4]

## II.    Plaintiff's State Law Claims Fail as Alleged

Plaintiff's six other claims all arise under state law.  As the mortgage contains a choice of law provision requiring that it "be governed by federal law and the law of the jurisdiction in which the Property is located" (Mortgage, Dkt. 20-1, Ex. A, ¶ 16), the Court applies both federal and Florida law to these claims.  *See Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014) ("New York choice-of-law rules also require the court to honor the parties' choice of law provision insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated.") (internal quotations, brackets, and citations omitted); *Papapietro v. Litton Loan Servicing, LP*, No. 13-CV-2433 (WFK) (ST), 2020 WL 13179529, at *8 (Mar. 31, 2020) ("[a]s the [m]ortgage contains a choice of law provision in favor of federal law and the law of the jurisdiction in which the Property is located, the Court will analyze the state law claims under the law of Pennsylvania," where the Property is located); *see also Fidelity Fed. Sav. & Loan*

---

[4] Based on its review of Subpart C of Regulation Z, which applies to closed-end credit, the Court finds that it does not contain provisions analogous to 12 C.F.R. §§ 1026.10 and 1026.13 in Subpart B.  Rather, Subpart C "contains rules on disclosures, treatment of credit balances, annual percentages rate calculations, rescission requirements, and advertising" (12 C.F.R. § 1026.1)—none of which address the date on which the creditor must accept payment or billing errors.

*Ass'n v. de la Cuesta*, 458 U.S. 141, 157 n. 12 (1982) (holding that, in general, the "'law of the jurisdiction' includes federal as well as state law" with respect to choice-of-law clauses).

## A.  Second and Sixth Causes of Action: Breach of Fiduciary Duty and Negligence

Plaintiff alleges that "Defendant created, accepted, and acted in a fiduciary relationship of great trust for Plaintiff's alleged benefit" and "further placed itself in a position of trust by virtue of the expertise represented by and through its agents and employees." (Compl., Dkt. 1, ¶ 36.) Plaintiff claims that Defendant breached its fiduciary duties to Plaintiff "by instituting inaccurate and improper billing practices without due care to Plaintiff's best interest." (*Id.* ¶ 37.) As for negligence, Plaintiff alleges that Defendant "owed Plaintiff a legal duty based on a six-factor test," the source of which he does not identify. (*Id.* ¶ 58.) Defendant responds that it owed no duty capable of giving rise to Plaintiff's fiduciary duty or negligence claims. (Defs.' Motion, Dkt. 19, at 11–13.) Defendant also asserts that the "independent tort doctrine" bars Plaintiff from claiming that Defendant either breached a fiduciary duty or committed negligence arising from the same alleged misconduct as Plaintiff's separate breach of contract claim. (*Id.* at 13–14.)

### 1.  Legal Standard

Under Florida law, "claims for both breach of fiduciary duty and gross negligence require as their first element that the defendant owe the plaintiff some legal duty." *Akiki v. Bank of Am., N.A.*, 632 F. App'x 965, 971 (11th Cir. 2015) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)); *see also Lamm v. State St. Bank & Trust*, 749 F.3d 938, 947 (11th Cir. 2014) (same). "As a general matter, there is no presumed fiduciary relationship between a lender and a borrower under the common law." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226 n.13 (11th Cir. 2002). However, "a fiduciary relationship could potentially arise in special circumstances where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is

relying on the bank so to counsel and inform him," *Akiki*, 632 F. App'x at 972, or where a lender "takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control." *Building Educ. Corp. v. Ocean Bank*, 982 So.2d 37, 41 (Fla. Dist. Ct. App. 2008). For example, Florida courts have found that a fiduciary relationship existed between banks and their customers where the bank "invited [the customer]'s reliance by urging [the customer] to trust [the bank] and by reassuring [the customer] that he was part of the . . . Bank family" and "foster[ing the customer]'s perception that the bank was his financial advisor." *Cap. Bank v. Mvb*, 644 So. 2d 515, 520 (Fla. Dist. Ct. App. 1994). Even general allegations that a lender "received an extra financial benefit from charging more for . . . property inspections than the cost incurred" can be sufficient for Plaintiff's claim that a fiduciary relationship existed to survive a motion to dismiss. *See Duncan v. Rushmore Loan Mgmt. Svcs.*, *LLC*, No. 20-CV-1524 (CEM) (GJK), 2021 WL 8774248, at *11 (M.D. Fla., Sept. 30, 2021).

Similarly, the duty required to plead negligence under Florida law "cannot stem from a contractual relationship between the parties." *Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1378 (S.D. Fla. 2015). Duties that "arise from the mortgage contract and promissory note" cannot be violated by the mortgage lender's negligence. *Id.* Instead, "[i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such a breach can constitute negligence." *Tiara Condominium Ass'n Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 408–09 (Fla. 2013) (Pariente, J., Concurring) (citation omitted).

Consequently, under the independent tort doctrine, "a tort plaintiff who's entered into a contract with a defendant must *always* show that the tort claim he's asserting is *independent* of any contractual claim he might've had." *Rife v. Newell Brands, Inc.*, ---F. Supp. 3d.----, ----, 2022 WL 4598666, at *21 (S.D. Fla. Sept. 30, 2022) (dismissing "tort claim for what is in essence a

9

contractual breach")  (emphasis in original); *Nguyen v. Raymond James & Assocs., Inc.*, No. 8:20-CV-195 (CEH) (AAS), 2021 WL 6091094, at *7 (M.D. FL. Dec. 23, 2021) ("This Court has frequently applied this doctrine when barring tort claims which are grounded in and do not go beyond a contract") (collecting cases); *cf. George & Company LLC v. Spin Master Corp.*, No. 18-CV-154 (SPC) (MRM), 2018 WL 5268754, at *4 (M.D. Fla. Sept. 13, 2018) (declining to apply independent tort doctrine where complaint sufficiently pled fiduciary relationship and breach thereof outside of the parties' license agreement); *CMR Construction & Roofing LLC v. Orchards Condominium Assoc., Inc.*, Nos. 20-CV-422 (FTM) (MRM), 20-CV-564 (FTM) (MRM), 2020 WL 6273740, at *3 (M.D. Fla. Oct. 26, 2020) (permitting fraud claim to proceed where it "could not form the basis of [the alleged] . . . breach of contract claim").

2. <u>Application</u>

With respect to Plaintiff's breach of fiduciary duty claim, it is evident from the face of his Complaint that Plaintiff fails to allege any facts tending to show "special circumstances" of trust or service between Rocket Mortgage and himself.  Their relationship was plainly that of mortgage lender ("Note Holder") and "Borrower," as evidenced by the Mortgage (Dkt. 20-1, at ECF 2) and Note (Dkt. 20-2, at ECF 2) alleged in the Complaint.  Therefore, no fiduciary relationship existed between Defendant and Plaintiff, and none was breached by Defendant.

With respect to his negligence claim, Plaintiff alleges that a legal duty was owed and breached by Defendant's negligence "based on a six-factor test": 1) "the transaction at issue was undoubtedly intended to affect Plaintiff"; 2) it was "readily foreseeable" that misapplying Plaintiff's payments "would harm Plaintiff"; 3) Plaintiff's "injuries are certain," *i.e.*, he had to pay late fees; 4) Defendant caused Plaintiff's injuries by charging late fees; 5) Defendant's billing practices "warrant[] moral blame"; and 6) "public policy" is best served by prohibiting Defendant

and other lenders "from instituting inaccurate and improper billing practices[.]"  (Compl., Dkt. 1, ¶ 58.)  Putting aside the fact that Plaintiff neither cites authority for, nor explains the source of, this purported "six-factor test," three of these "factors," *i.e.*, Nos. 1, 2, and 6, do not even suggest any type of duty, and the other three, *i.e.*, Nos. 3, 4, and 5, at most, suggest a duty with respect to the assessment of late fees and billing practices.  But, clearly, any duty that Defendant owed relating to the assessment of late fees arose out of, and is defined by, the terms of the parties' mortgage agreement and thus cannot be the basis for a negligence claim.  And, as to billing practices, Plaintiff fails to provide any legal support for the notion that lenders have a duty to their clients to employ certain billing practices or even a certain standard of billing practices.  Thus, because Plaintiff has failed to allege a duty that would support a negligence claim, Plaintiff's sixth cause of action must be dismissed.

## B.  Third and Fourth Causes of Action: Breach of Implied Covenant of Good Faith and Fair Dealing and Breach of Contract

In his Third Cause of Action, Plaintiff alleges that Defendant breached the mortgage agreement "by failing to comply with essential terms of the contract regarding the application of payments," which they did by misapplying or withholding application of Plaintiff's payments and imposing improper late notices and late fees.  (Compl., Dkt. 1, ¶ 47.)  In the Fourth Cause of Action, Plaintiff alleges that Defendant "breached the covenant of good faith and fair dealing implied in the [mortgage loan agreement]" by instituting "inaccurate and improper billing practices" and, ultimately, improperly charging Plaintiff late fees.  (Compl., Dkt. 1, ¶¶ 41–45.)

Defendant moves to dismiss Plaintiff's breach of contract claim on the basis that 1) the Complaint fails to identify a contract provision that was breached, and 2) the mortgage agreement itself controverts Plaintiff's theory of breach.  (Defs.' Motion, Dkt. 19, at 14–16.)  Defendant

moves to dismiss Plaintiff's implied-covenant claim on the basis that Plaintiff fails to plead the breach of any specific contractual term.  (Dkt. 19, at ECF 23–24.)

    1.  <u>Legal Standard</u>

      a.  <u>Breach of Contract</u>

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citation omitted).  A breach of contract claim must be dismissed "where it is unclear what provision or obligation under the contract has been violated." *Heyward v. Wells Fargo Bank, NA*, No. 20-CV-572 (VMHC), 2020 WL 10353829, at *3 (M.D. Fla., Oct. 6, 2020) (citation omitted).  To survive a motion to dismiss, sufficient facts must be plead to determine which contractual provisions are alleged to have been breached.  *See Whitney Nat. Bank v. SDC Communities, Inc.,* No. 09-CV-01788 (EAK) (TBM), 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010) (dismissing breach of contract case where plaintiff failed "to allege the specific provision of the contract allegedly breached").  However, Courts may allow a breach of contract claim to proceed even when the relevant portion of the complaint "is not the most precise pleading"—for example, where the particular contract provision is not identified, but the provision can be discerned by reference to the specific factual allegations that are plead.  *See, e.g. Regal v. Butler & Hosch, P.A.*, No. 15-CIV-61081 (BB), 2015 WL 11198248, at *5 (S.D. Fla. Oct. 8, 2015) ("While the Complaint in this regard is not the most precise pleading, it does indicate that B&H breached by failing to pay employees 'earned unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, all accrued paid time off, pension and 401(k) contributions, COBRA benefits, and other benefits'").  Even so, "ambiguous catchall allegations are insufficient to survive a motion to

dismiss." *Syrainfotek, LLC v. Sakirrola*, No. 20-CV-797 (VMHC), 2021 WL 7161942, at *3 (M.D. Fla. Jan. 12, 2021) (internal citations and quotations omitted).

      b. <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

  In Florida, "a covenant of good faith and fair dealing is implied in every contract." *Sekula v. Res. Credit Solutions, Inc.*, No. 15-CV-2104 (GAP), 2016 WL 1559142, at *4 (M.D. Fla. Apr. 18, 2016) (citing *Centurion Air Cargo Inc. v. Utd. Parcel Svc. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005)).   However, a breach of this implied covenant "attaches to the performance of a specific contractual obligation."   *Id.*   It "is not an independent cause of action."   *Heyward*, 2020 WL 10353829, at *3–4.   Where a breach of contract claim has been dismissed "a party cannot recover under the implied covenant if there has been no breach of a specific contract provision.   This is fatal to the implied-covenant claim."   *Sapuppo v. Allstate Floridian Ins. Co.*, No. 12-CV-382 (RH) (CAS), 2013 WL 6925674, at *6 (N.D. Fla. Marc. 12, 2013), *aff'd*, 739 F.3d 678 (11th Cir. 2014).

    2. <u>Application</u>

  First, there is no question that the mortgage agreement is a valid contract.   The mortgage agreement, which was in effect when the Complaint was filed, satisfies all four requirements of a valid contract under Florida law: "(1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient specification of the essential terms of the agreement."   *Scopelliti v. McClean*, No. 20-CV-104 (CEH) (CPT), 2022 WL 3209495, at *5 (M.D. Fla. July 11, 2022) (citation omitted); (*see generally* Dkt. 20, Def.'s Aff.)

  Second, although the Complaint is not a model of clarity, the Court finds that Plaintiff has sufficiently alleged a material breach of the mortgage agreement.   Although Plaintiff fails to identify a specific provision of the mortgage agreement that was allegedly breached—instead staking this claim on the vague and conclusory allegation that "Defendant breached the contract by failing to comply with essential terms of the contract regarding the application of payments"

(Compl., Dkt. 1, ¶ 47)—the Complaint otherwise references the obligation that Defendant allegedly transgressed: the obligation to properly credit his payments per the monthly schedule established in the mortgage agreement. (Compl., Dkt. 1, ¶¶ 10–17.) The Court therefore construes Plaintiff as alleging that Defendant materially breached its obligations under Paragraphs 6.(A) and 6.(B) of the Note, which provide, in relevant part:

> 6. Late Charge for Overdue Payments
> (A) Late Charge for Overdue Payments[:] If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder . . . .
>
> (B) Default[:] If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(Note, Dkt. 20-2, at ECF 3; *see also* Pl.'s Response, Dkt. 22, at ECF 6–7.)[5]

Third, Plaintiff sufficiently alleges "damages resulting from such breach." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1365 (M.D. Fla. 2007). Plaintiff alleges four late fee charges of $49.59. (*See generally* Ex. B; Compl., Dkt. 1, ¶¶ 13–17.) Although Defendant claims that two of the charges have been refunded,[6] Plaintiff alleges ongoing damages, stating that, "[d]ue to the Defendant's continued inaccurate and improper billing practices and misrepresentations, Plaintiff and the Class have suffered, and continue to suffer, damage[,] the exact amount of which ha[s] not been fully ascertained . . . ." (Compl., Dkt. 1, ¶¶ 14, 16, 17, 34; *see generally* Dkts. 1-1 and 1-2, Exs. A and B.) Plaintiff also alleges that Defendant's breach of contract caused Plaintiff and the putative class "to suffer injuries and damages" and that they are "entitled to incidental and consequential expenses and damages in an amount to be shown at time

---

[5] Although statements in Plaintiff's opposition do not constitute complaint allegations or deficiencies in the Complaint, the Court notes that Plaintiff also identifies Paragraphs 6.(A) and 6.(B) in his opposition as the provisions that were allegedly breached by Defendant.

[6] Defendant describes these refunds as "a customer service accommodation" rather than an admission that the late fees were improperly charged. (Defs. Motion, Dkt. 18, at ECF 22.)

of trial." (Dkt. 1, ¶ 47.)  The Complaint seeks actual, compensatory, and punitive damages and "the costs of bringing this suit."  (*Id.* at 16–17.)  These damages allegations are "not necessarily so speculative, unforeseeable, and attenuated" as to warrant dismissal at this stage.  *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, No. 20-CV-927 (PGB) (EJK), 2022 WL 18492541, at *7 (M.D. Fla. Nov. 23, 2022) (internal quotations and citations omitted).

However, despite the Complaint sufficiently *alleging* the elements of a breach of contract claim, that claim ultimately fails because those allegations are contradicted by the documents upon which they rely, namely, the Mortgage and the Note, which, as discussed, are incorporated by reference and integral to the Complaint.  Under Florida law, "a court need not feel constrained to accept as truth . . . pleadings . . . that are contradicted either by statements in the complaint itself[,]" or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.  *Jacoby v. Cable News Ntwk, Inc.*, 537 F. Supp. 3d 1303, 1313 n.5 (M.D. Fla. 2021) (citing *Accurate Grading Quality Assur., Inc. v. Thorpe,* No. 12-CV-1343, 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2023) (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 405–06))).

Here, Plaintiff's breach of contract claim is controverted by a careful reading of the Mortgage and Note.  Plaintiff claims that Defendant improperly assessed late fees even though Plaintiff complied with provision 6.(A) of the Note, which required him to pay "the full amount of any monthly payment by the end of fifteen calendar days after the date it is due." (Plaintiff's Response to the Motion to Dismiss (Pl.'s Resp.")), Dkt. 22, at 3–4.)  For example, he alleges that he was erroneously assessed late fees in October 2021, despite paying $1,691.84 between September 23 and September 30, 2021, which he believed more than covered his required monthly payment for October 2021 of $991.84.  (Compl., Dkt. 1, ¶¶ 13–14.)  While Plaintiff is obviously

correct that the *amount* he paid during the week of September 23, 2021 was more than enough to cover his October 2021, he ignores (and perhaps misapprehends) the crucial issue of when his monthly payments *came due*.  The Note could not be clearer on this point: "I will make my monthly payment on the 1st day of each month beginning on April 1, 2016. . . . Each monthly payment will be applied *as of its scheduled due date*…"  (Dkt. 20-2, Section 3.A, at ECF 2 (emphasis added).)  Thus, under Section 3.A, Defendant was not required to—and apparently did not—credit any payments Plaintiff made prior to the first day of the month, *i.e.,* the "scheduled due date," toward that month's periodic mortgage payment.  It was therefore proper under the Note for Defendant not to credit Plaintiff's September 23–30, 2021 payments against his October 2021 mortgage obligation and to then assess late fees against Plaintiff when he failed to send any payment between October 1 to October 15, 2021, which was the grace period for that month as described in the Note.  Although Plaintiff seems to acknowledge the existence of this due date provision,[7] he seems not to recognize its effect; instead, he seems to believe that any payments made in advance of the "late fee" date are applied against the "monthly payment," rather than recognizing that the first of the month is the first date on which he can make his monthly payment.

Other provisions of the Mortgage and Note are further evidence of the fundamental misunderstanding evinced by Plaintiff's breach of contract claim.  The Note explicitly distinguishes between "prepayment," *i.e.* payments made "any time before they are due," and monthly payments.  (Dkt. 20-2, Section 4, at ECF 2.)  Prepayments are applied only against mortgage principal, or Defendant may apply the prepayment "to the accrued and unpaid interest on the Prepayment amount," whereas monthly payments cover a set amount of principal and

---

[7] *See* Compl., Dkt. 1, ¶ 12, where Plaintiff acknowledges that "[e]ach monthly billing statement is dated for the 16th of each month, with a payment due date of the 1st of each month."

interest.  (*Id.*)  Further, the Note explains that if Plaintiff makes "a partial Prepayment, there will be no changes in the due date or in the amount of [Plaintiff's] monthly payment unless the [Defendant] agrees in writing to those changes."  (*Id.*)  Plaintiff has not alleged the existence of any such written agreement.

The Mortgage further corroborates the terms of the Note and contradicts Plaintiff's pleadings.  Plaintiff accuses Defendant of improperly "withholding" the partial payments he made so as to find him delinquent and assess late fees.  (Compl., Dkt. 1, ¶¶ 2, 33, 37, 44, 47, 62.)  But the Mortgage explicitly states that "Lender may accept any payment or partial payment insufficient to bring the Loan current[,] . . . but Lender is not obligated to apply such payments at the time such payments are accepted."  (Dkt. 20-1, Uniform Covenants Section 1, at ECF 5.)  The Mortgage also describes the "order of priority" for applying payments as follows, from highest to lowest priority: 1) periodic (*i.e.*, monthly) payments "in the order in which it became due," 2) late charges, 3) "other amounts due under this Security Instrument, and 4) principal.  (*Id.*, Uniform Covenants Section 2.)  Therefore, when Plaintiff paid his monthly payment amount before his monthly payment came due, his payments went to late charges, then "other amounts due," then to principal—*not* to his next anticipated monthly payment.

Because the breach Plaintiff alleges does not exist and is actually based on his misunderstanding of the terms of his mortgage loan agreement with Defendant, Plaintiff fails to sufficiently plead breach of contract, and his claim is dismissed.  As such, because there is "no breach of a specific contract provision," *Sapuppo*, 2013 WL 6925674, at *6, Plaintiff's breach of implied covenant of good faith and fair dealing claim fails as well.

**A.  Fifth Cause of Action: Common Law Fraud**

Plaintiff alleges that Defendant committed common law fraud by intentionally misrepresenting or concealing facts from Plaintiff regarding his monthly payments, intending for Plaintiff to rely on those misrepresentations as Defendant fraudulently charged him late fees. (Compl., Dkt. 1 ¶¶ 49–51.) Plaintiff further alleges that Defendant's "representations were made with a reckless indifference to the truth that they would not honor all of the payments made within each month," which were greater than the required monthly payments. (*Id.* ¶ 53.)

Defendant argues that Plaintiff fails to plead his fraud claim, especially with the "particularity required" by Federal Rule of Civil Procedure 9(b). (Defs.' Motion, Dkt. 19, at ECF 24–26.) Defendant also argues that this claim should be dismissed under the independent tort doctrine as yet another tort that Plaintiff has failed to distinguish from his breach of contract claim. (*Id.*, at ECF 26–27.)

### 1. Legal Standard

In Florida, when fraud is alleged alongside breach of contract, "[t]he critical inquiry for a fraud claim focuses on whether the alleged fraud is separate and apart from the performance of the contract." *Spears v. SHK Consulting & Development, Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) (internal citations and quotations omitted). Where "the factual allegations underlying [Plaintiff]'s . . . fraud claim and breach-of-contract claims are the same," Plaintiff's fraud claim is necessarily barred under the independent tort doctrine. *Id.*

### 2. Application

Like Plaintiff's breach of fiduciary duty and negligence claims, and indeed all seven of Plaintiff's causes of action, Plaintiff's fraud claim arises from the same alleged misconduct: Defendant's alleged misapplication of Plaintiff's mortgage payments and, relatedly, the allegedly

improper imposition of late fees.  Plaintiff's fraud claim is dismissed for the same reasons discussed above, pursuant to the independent tort doctrine.[8]

**B.  Seventh Cause of Action: Unjust Enrichment**

Plaintiff argues that Defendant's misapplication of his monthly payments and the concomitant imposition of late fees constitutes unjust enrichment.  (Compl., Dkt. 1, ¶¶ 62–64.) Defendant argues that Plaintiff's unjust enrichment claim, which is a "quasi-contract" claim, necessarily fails because it relates to conduct arising from the parties' mortgage agreement, an express contract.  (Defs.' Motion, Dkt. 19, at ECF 27–28.)

1.  Legal Standard

"Florida law is clear that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Esprit Stones Private Ltd. v. Rio Stone Group Inc.*, No. 19-CV-637 (CEM) (LRH), 2021 WL 4935648, at *8 (M.D. Fla. July 28, 2021) (internal quotations and citations omitted); *Davidson v. Maraj*, 609 F. App'x 994, 1000–01 (11th Cir. 2015) (affirming dismissal of unjust enrichment claim where complaint "demonstrates some type of contractual relationship").  Further, although "Florida law and the Federal Rules of Civil Procedure generally allow a party to plead claims for unjust enrichment and breach of contract in the alternative," *Doerr v. Abplanalp*, No. 19-CV-1194 (PGB), 2021 WL 1979430, at *11 (M.D. Fla. Jan. 13, 2021) (citation omitted), "a determination regarding these alternative claims would be premature" before there is a determination as to the enforceability or validity of the express agreement between the parties.  *GenTek, Inc. v. TDK-Lambda Americas, Inc.*, No. 08-CV-2315 (RAL), 2010 WL 668173, at *6 (M.D. Fla. Feb. 18, 2010).

_____

[8] The Court therefore need not, and declines to, consider Defendant's argument that Plaintiff's fraud claim fails for lack of particularity.

2. <u>Application</u>

As is apparent from Plaintiff's cursory claim, there is no question that Plaintiff's unjust enrichment claim is foreclosed by the existence of the mortgage loan agreement at the heart of this litigation. Even though Plaintiff has failed to state a breach of contract claim based on the terms of the mortgage loan agreement, the fact that the agreement "concern[s] the same subject matter" as Plaintiff's unjust enrichment claim dooms that claim. Plaintiff does not in any way allege facts or otherwise argue that his unjust enrichment claim pertains to conduct that is not governed by the mortgage agreement at issue. Nor does he allege that the agreement is itself invalid. Therefore, Plaintiff's unjust enrichment claim must be dismissed. *See Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1220–21 (S.D. Fla. 2015) (dismissing unjust enrichment claim where "mortgage contracts, the authenticity of which Plaintiffs cannot contest, do in fact govern the subject of Plaintiffs' dispute.") (citing *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("As there is a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim . . . .")).[9]

## III.   No Class Can Be Certified

Because all claims are being dismissed in this matter, no class can be certified. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008) ("[W]hen a claim cannot succeed as a matter of a law, the Court should not certify a class on the issue[.]"), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008).

---

[9] Because the Court has granted Defendant's motion on the merits, it does not address Defendant's more procedural arguments for dismissal. (*See* Dkt. 19, at ECF 7–8 (arguing that the Complaint should be dismissed for Plaintiff's alleged failure to comply with the "Notice of Grievance" provision of the Mortgage); Dkt. 21, at ECF 5 (arguing that Plaintiff's failure to "respond substantively" to Defendant's motion to dismiss arguments means that he has "effectively conceded them.").)

20

## CONCLUSION

For the reasons explained above, Defendant's motion to dismiss is granted, and all of Plaintiff's claims are dismissed with prejudice.  The Clerk of Court is respectfully directed to enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2023
Brooklyn, New York